**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBIAH DARWISH, | ) | CASE NO. 1:25-cv-1749 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants Cuyahoga County, Ohio, Harold Pretel, and Aaron Reese's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Motion for Judgment"). (ECF No. 13).  Plaintiff has filed a timely opposition, (ECF No. 17-1), and Defendants a timely reply in support of their motion, (ECF No. 18).  For the reasons discussed below, the Motion for Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.  FACTUAL BACKGROUND[1]

### A.  The Protest and Assault

On July 30, 2024, Plaintiff Robiah Darwish, a Palestinian, Arab American, Muslim woman, took part in a protest at the Cuyahoga County Administrative Headquarters located at 2079 E 9th Street, Cleveland, OH 44115, where protestors assembled in the hallway outside the Cuyahoga County Council meeting room to express their opposition to Cuyahoga County's investment in Israeli bonds.  (ECF No. 7, PageID #77, ¶¶ 19–21).  While moving through the crowd of protestors, Cuyahoga County Sheriff's ("CCS") deputy Matthew Lawler elbowed

---

[1] The factual allegations that follow are contained within Plaintiff's first amended complaint.  (ECF No. 7).  The Court must accept all plausible allegations as true because, at this stage of the proceeding, the Court must construe the allegations in a light most favorable to Plaintiff (the non-movant).  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

Plaintiff.  (*Id.* ¶ 22).  Following behind Lawler, CCS deputies Adam Babics and Carmille Fanara both shoved Plaintiff while walking past and then turned around to shove her again.  (*Id.* ¶¶ 23–25).  After demonstrators stepped in to protect Plaintiff from Babics and Fanara, CCS deputy Daniel Berman grabbed Plaintiff and shoved her against a wall.  (*Id.* ¶¶ 26–27).  These physical assaults by the CCS deputies ("July 30th Assault") caused Plaintiff physical injuries and emotional trauma, which forced Plaintiff to undergo medical treatment and suffer lost wages, earnings, and earning capacity.  (*Id.* at PageID #78, ¶¶ 32–33, 36).

**B.     Cuyahoga County's Training, Policies, And Practices**

From May 19 to May 24, 2019, Defendant Pretel, while serving as Deputy Chief of Homeland Special Operations for the Cleveland Division of Police, participated in a law enforcement exchange trip to Israel sponsored by Israel's Ministry of Diaspora Affairs; during the trip, Pretel was exposed to Israeli strategies and practices for crowd control and protest management used by Israel for suppression of Palestinian and political dissent.  (*Id.* at PageID #78–79, ¶¶ 37–40).  When Pretel assumed the position of Cuyahoga County Sheriff, he incorporated the Israeli protest-suppression tactics he learned on the trip and enacted policies and customs that normalized excessive force, surveillance, silencing protests, and targeting Palestinian, Arab, Muslim, and pro-Palestinian protesters.  (*Id.* at PageID #79–80, ¶¶ 41–43).

In the Spring of 2024, Pretel (as the Cuyahoga County Sheriff) and Defendant Aaron Reese (as the Chief Deputy of the CCS) (collectively, "Supervisor Defendants") traveled to Israel on another law enforcement exchange program where they received additional training on protest-suppression strategies.  (*Id.* at PageID #80, ¶¶ 44–45).  At that time, Supervisor Defendants were final policymakers for Cuyahoga County with respect to Sheriff's Office training, supervision, and protest-policing.  (*Id.* ¶ 45).  Supervisor Defendants adopted, enacted, and enforced customs,

policies, and procedures they learned during these law enforcement exchange programs which resulted in the conduct that injured Plaintiff at the June 30, 2024 protest.  (*Id.* at PageID #81–82, ¶¶ 51–56).

### C. Pattern of Discriminatory Practices and Suppression of Speech

In 2014, 2015, and 2018, Muslim plaintiffs who had been inmates in Cuyahoga County custody, filed civil suits against Cuyahoga County that asserted religious discrimination claims; Cuyahoga County settled all these claims.  (*Id.* at PageID #82–83, ¶¶ 58–60).  During anti-genocide protests at Cuyahoga County Council meetings that occurred in the wake of Israel's invasion of Gaza in late 2023, Palestinian, Arab, Muslim, and allied community members were often forcibly removed by CCS deputies even when not actively protesting or causing a disruption.  (*Id.* at PageID #83–84, ¶¶ 63–64).  On October 8, 2024, Faten Odeh, a Muslim woman of Palestinian descent, was observing and filming the demonstrations at the County Administrative Building when CCS deputies shoved her and warned her that they would escalate matters if she and other protestors did not leave.  (*Id.* at PageID #84–85, ¶ 66).  During a protest at Baltic Park on November 24, 2024, CCS deputies and Cleveland police pulled several protesters from the crowd without warning, seized their property, and issued citations.  (*Id.* at PageID #85, ¶ 67).

## II. PROCEDURAL BACKGROUND

On July 21, 2025, Plaintiff filed a complaint in Cuyahoga County Court of Common Pleas against Defendants Cuyahoga County ("County"), as well as Carmille Fanara, Matthew Lawler, Adam Babics and Daniel Berman (collectively "Deputy Defendants"), asserting various claims under 42 U.S.C. § 1983 and Ohio law.  (ECF No. 1-1).  On August 22, 2025, Defendants removed the case to the Northern District of Ohio pursuant to 28 U.S.C. §§ 1331 and 1441 on the basis of the Court's federal question jurisdiction.  (ECF No. 1).  Defendants answered the complaint on

August 28, 2025.  (ECF No. 3).  The same day, the County filed a Rule 12(c) motion for judgment on the pleadings as to all claims against it.  (ECF No. 4).

On September 17, 2025, Plaintiff requested leave to file a first amended complaint.  (ECF No. 6).  The Court issued an order granting leave to amend and denying the County's Rule 12(c) motion as moot.  (Order [non-document] dated September 17, 2025).  The first amended complaint was filed on September 29, 2025.  (ECF No. 7).  On September 30, 2025, the Court denied the County's Rule 12(c) motion as moot.  (ECF No. 8).  The first amended complaint adds Aaron Reese and Harold Pretel (Supervisor Defendants) and sets forth twelve causes of action.  (ECF No. 7).  It asserts seven causes of action against the Deputy Defendants: (i) violation of the First and Fourteenth Amendment/Free Speech (Count I); (ii) violation of the Fourteenth Amendment/Excessive Force (Count II); (iii) violation of the Fourteenth Amendment/Equal Protection of the Law (Count III); (iv) civil liability for criminal acts under Ohio Rev. Code § 2307.60 (Count VII); (v) common law assault (Count VIII); (vi) common law battery (Count IX); and (vii) common law intentional infliction of emotional distress (Count X).  (*Id.* at PageID #86–88, 97–99).  It asserts three claims against the County based on a theory of *Monell* liability for the underlying Free Speech, Excessive Force, and Equal Protection claims against the Deputy Defendants (Counts IV, V, and VI, respectively).  (*Id.* at PageID #89–97).  Finally, it asserts two claims against Supervisor Defendants: (i) Supervisory and Policymaker Liability for First Amendment Retaliation, Fourteenth Amendment Excessive Force, and Equal Protection (Count XI); and (ii) Reckless Hiring, Training, Supervision, Discipline, Staffing, and Retention (Count XII).  (*Id.* at PageID #100–02).

On October 31, 2025, the County and Supervisor Defendants [hereinafter, collectively "Defendants"] filed the Motion for Judgment, seeking dismissal of the claims asserted against

them in the first amended complaint.  (ECF No. 13).  Plaintiff filed an amended brief in opposition, (ECF No. 17-1), and Defendants filed a reply in support, (ECF No. 18).

III.    **STANDARD OF REVIEW**

After the pleadings are closed, a party may move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is essentially a delayed motion to dismiss under Rule 12(b)(6) and is evaluated under the same standards.  *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (2021). Because the standards are the same, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. 2016 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  Judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law. *Anders*, 984 F.3d at 1174.  In construing the pleadings, the Court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions.  *Holland v. FCA US LLC*, 656 F. App'x 232, 236–37 (6th Cir. 2016) (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

In deciding a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation

omitted).  Conversely, "[m]ere labels and conclusions are not enough[.]"  *Engler*, 862 F.3d at 575.  Nor are facts that are "merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

## IV.  DISCUSSION

### A.  *Monell* Claims against the County

In Counts I, II, and III, Plaintiff asserts that the Deputy Defendants committed federal constitutional violations by violating her First and Fourteenth Amendment rights to free speech, Fourteenth Amendment right to be free from excessive force, and Fourteenth Amendment right to equal protection of the law.  (ECF No. 7, PageID #86–88).  In Counts IV, V, and VI, Plaintiff asserts that the County is liable for the constitutional violations committed by the Deputy Defendants under a theory of *Monell* liability based on "Policy/Custom/Deliberate Indifference/Failure to Train and Supervise."  (*Id.* at PageID #89–97).

"Under *Monell's* doctrine of municipal liability, 'an injured plaintiff can sue a local government directly for the unconstitutional actions of its employees when those actions are taken pursuant to a policy or custom of the governing body.'"  *Blankenship v. Louisville-Jefferson Cnty.*, 162 F.4th 644 (6th Cir. 2025) (quoting *Ramage v. Louisville-Jefferson Cnty. Metro Gov't*, 520 F. App'x 341, 345 (6th Cir. 2013)).  To impose liability on a municipal entity under § 1983, a plaintiff must prove: (i) a violation of a constitutional right; and (ii) the violation was caused by an official policy or custom.  *Monell*, 436 U.S. at 690–92; *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  For the second prong, a plaintiff may prove an official policy or custom by showing either: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal

rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Defendants contend that Plaintiff's *Monell* claim must be dismissed because she has failed to plead sufficient facts to establish an official policy or custom under any of the four avenues discussed above.  (ECF No. 13, PageID #139–48).  The Court will address each avenue in turn.

### 1.    Official Policy or Custom

To state a *Monell* claim based on the "official policy" theory of liability, "a plaintiff must '(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy.'"  *Osberry v. Slusher*, 750 F. App'x 385, 398 (6th Cir. 2018) (quoting *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *see also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (explaining that an official policy claim requires a plaintiff to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy" (citation  omitted)).  Defendants argue that Plaintiff has failed to identify any specific unconstitutional policy or plausibly demonstrate sufficient causation.  (ECF No. 13, PageID #140–42).  The Court disagrees.

The pleadings, at this stage of the proceeding, sufficiently identify an official CCS policy of using protest-suppression tactics that use force, intimidation, and harassment against protestors engaging in protected speech, particularly those who are pro-Palestine and/or anti-Israel.  There is enough specificity in the pleadings to put Defendants on sufficient notice of what the alleged official policy is.  Plaintiff was not required to point out or provide any written policy records, as the Sixth Circuit has explained that "formal rules or understandings—*often but not always committed to writing*" are sufficient to establish an official policy under the first *Monell* avenue.

*Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (emphasis in original) (quoting

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

Plaintiff alleges that Defendant Pretel participated in a law enforcement exchange trip to Israel

where he was exposed to and learned tactics for suppressing and neutralizing protest activity by

prioritizing surveillance, intimidation, and force over constitutional safeguards.  (ECF No. 7,

PageID #78–79, ¶¶ 37–40).  Plaintiff further pleads that Pretel incorporated these tactics of

suppression into training and County policy in his role as Cuyahoga County Sheriff.  (*Id.* at PageID

#79–80, 82, 90–92 ¶¶ 41–45, 54–56, 101–02, 116).

The Court also finds that Plaintiff has sufficiently pled proximate causation.  "The

cornerstone of the proximate-cause analysis is foreseeability; we ask 'whether it was reasonably

foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the

defendant's conduct.'"  *Crabbs v. Scott*, 800 F. App'x 332, 338 (6th Cir. 2020) (quoting *Powers*

*v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007)).  The question is then,

whether the alleged official policy/custom of the CCS to use force, intimidation, and harassment

against Free Speech protestors would make it reasonably foreseeable that deputies would suppress

speech protected by the First Amendment and use excessive force in violation of the Fourteenth

Amendment—Plaintiff's alleged injuries.  *See id.*  The Court finds that Plaintiff's alleged injuries

to be a reasonably foreseeable result.  Thus, the Court finds that Plaintiff has sufficiently pled

a *Monell* claim under an official policy theory of liability.

>        2.        *Ratification*

For the ratification theory of liability, there are two ways to show ratification: "(1) when

the governmental entity 'fail[s] to meaningfully investigate and punish allegations of

unconstitutional conduct,' *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020), and

(2) when an official with policymaking authority issues a final decision affirming a subordinate's decision, *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994)." *R.L. v. Knox Cnty.*, No. 24-5002, 2024 U.S. App. LEXIS 28458, at \*20 (6th Cir. Nov. 6, 2024) (alteration in original).  Reviewing the First Amended Complaint, there are no allegations that an official with policymaking authority issued a final decision affirming the Deputy Defendants' conduct related to the July 30th incident.  Plaintiff's argument and allegations that Supervisor Defendants "ratified" the underlying policy/custom of using excessive protest-suppression tactics are unavailing as those do not represent a ratification of the relevant conduct specifically alleged against Deputy Defendants, but demonstrate an official policy under the first *Monell* avenue.

Plaintiff argues that the First Amended Complaint sufficiently supports a ratification theory of *Monell* liability because it alleges that "Defendant Cuyahoga failed to investigate the assault, failed to take corrective action, and otherwise manifested deliberate indifference to constitutional violations against Plaintiff, which plausibly constitutes ratification of that conduct."  (ECF No. 17-1, PageID #258).  The Court find this argument unpersuasive because Plaintiff solely alleges that a failure to investigate and take corrective action in this one instance.  "To establish *Monell* liability for ratification based on a failure to investigate, a plaintiff needs to show not only an inadequate investigation in this instance, but also a clear and persistent pattern of violations in earlier instances."  *Hart v. City of Grand Rapids*, 138 F.4th 409, 425 (6th Cir. 2025) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)) (internal quotation marks omitted). "This requires the plaintiff to present evidence of multiple earlier inadequate investigations . . . concerning comparable claims.  An allegation of a single failure to investigate a single plaintiff's claim fails to satisfy this standard."  *Id.* (cleaned up) (citations omitted); *see also Pineda*, 977 F.3d at 495 ("Because municipal liability requires an unconstitutional 'policy' or 'custom,' we have

held that an allegation of a single failure to investigate a single plaintiff's claim does not suffice."). This is exactly the same kind of deficient pleading provided by Plaintiff in this case.

The First Amended Complaint does not identify any earlier instances of constitutional misconduct that are akin to the claims presented in the instance case.  "[O]nly similar incidents of prior misconduct can put a municipal actor on notice that comparable misconduct may occur in the future."  *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014).  The First Amended Complaint identifies three incidents where Muslim individuals were incarcerated in the Cuyahoga County Jail and were either forced to attend Christian services under threat of punishment or were physically assaulted for attempting to offer Islamic prayer.  (ECF No. 7, PageID #82–83, ¶¶ 58–60).  These prior incidents, which relate to religious discrimination against incarcerated individuals, are not sufficiently similar to the instant allegations of suppressing Free Speech rights and the use of excessive force against protestors.  The incidents cited by Plaintiff are factually and legally distinct from the alleged misconduct in this case.  *See*, *e.g.*, *Sanders v. Cuyahoga Cnty.*, No. 1:21-cv-1254, 2022 U.S. Dist. LEXIS 229052, at *17-20 (N.D. Ohio Dec. 20, 2022).  Accordingly, the Court **DISMISSES** the *Monell* claims against the County to the extent they are based on a ratification theory of liability.

### 3.    Failure to Train

To survive the instant motion for judgment on the pleadings, Plaintiff has to establish that: (1) CCS's training program was inadequate; (2) this inadequacy resulted from the County's deliberate indifference; and (3) "the inadequacy either caused or was closely related to their injury."  *See Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025) (citing *Jackson*, 925 F.3d at 834); *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020).  As for the second element, "[a] municipality's failure to train its employees will support a *Monell*

claim only if it represents 'deliberate indifference' to the constitutional rights of 'persons with whom [they] come into contact.'" *Linden v. City of Southfield*, 75 F.4th 597, 605 (6th Cir. 2023) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)) (alteration in original).  "To prove that a municipality was deliberately indifferent to inadequate training, a plaintiff is generally required to show either (1) prior instances of unconstitutional conduct demonstrating that the City had notice that its training in that particular area was deficient and likely to cause injury, and did not act in response; or (2) a single violation of rights, accompanied by evidence that the City failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  *Austin v. Mosley*, No. 23-1425, 2025 LX 226843, at *8 (6th Cir. Feb. 10, 2025) (citing *Jackson*, 925 F.3d at 836); *see Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Defendants argue that Plaintiff cannot sustain a claim under this failure-to-train because the First Amended Complaint does not identify sufficiently similar prior violations to demonstrate a pattern of misconduct.  (ECF No. 13, PageID #142–43).  As discussed in the section above, the Court agrees that the prior incidents alleged in the First Amended Complaint are insufficient to demonstrate a pattern of misconduct.  However, Plaintiff can sustain a failure-to-train claim under a single instance of unconstitutional conduct.  *See Austin*, 2025 LX 226843, at *8; *Fisher*, 398 F.3d at 849.  Defendants' reply brief argues that a claim based on single-incident liability also fails because Plaintiff is simply alleging that additional/better training would have avoided the injuries caused by the July 30th Assault.  (ECF No. 18, PageID #339–40).  The Court disagrees.

Plaintiff is not merely alleging that more or better training would have avoided her alleged injuries.  Plaintiff is alleging that the training provided to Deputy Defendants is wholly inadequate, because it specifically trains deputies to use tactics that include excessive force and intimidation

against protestors (specifically pro-Palestinian ones), such that the training presents an obvious risk of violating First Amendment rights.  The Court also finds that the allegations sufficiently alleged "recurring situations" presenting an obvious risk in recurring protests at Cuyahoga County Council meetings.  The First Amended Complaint alleges that: "Beginning in the months following Israel's invasion of Gaza in late 2023 (and the Policymaker Defendants' trip to Israel in or about Spring 2024), anti-genocide demonstrations became a regular feature at Cuyahoga County Council meetings." (ECF No. 7, PageID #83, ¶ 63).  Besides law enforcement officers having to regularly confront situations where persons may be exercising their First Amendment right to protest, the allegations of these specific, regular demonstrations led by pro-Palestinian community members would have put the County on sufficient notice of an obvious need to properly train Sheriff's deputies on how to properly handle such situations.  Accordingly, the Court finds that Plaintiff has plausibly alleged a claim for *Monell* liability under a theory of inadequate training or supervision.

### 4. Acquiescence and Tolerance

To establish *Monell* liability based on custom of acquiescence or tolerance, a plaintiff must demonstrate:

> (1) the existence of a clear and persistent pattern of illegal activity;
> (2) notice or constructive notice on the part of the defendant;
> (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Wallace v. Coffee County*, 852 F. App'x 871, 876 (6th Cir. 2021) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)) (alterations adopted).  "To show notice of a pattern of illegal activity, a plaintiff must proffer evidence that the municipality was aware of past conduct 'similar' to the violative conduct alleged in the case at bar."  *Austin v. Mosley*, No. 23-1425, 2025 LX

226843, at \*12–13 (6th Cir. Feb. 10, 2025) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

As discussed above in the section addressing the ratification avenue, the Court finds that Plaintiff has failed to provide sufficient allegations of similar, prior unconstitutional behavior. Accordingly, this avenue for demonstrating *Monell* liability also fails.

In summation, for the reasons stated above, the Court finds that Plaintiff has provided sufficient allegations to support a *Monell* claim based on a theory of official policy or custom and failure to train.  Accordingly, the Court declines to dismiss Plaintiff's *Monell* claims against the County.

### B.    Count XI against Supervisor Defendants

#### 1.    *Insufficient Pleadings*

In Count XI, Plaintiff asserts that Supervisor Defendants are liable under § 1983 for First Amendment Retaliation, Fourteenth Amendment Excessive Force, and violations of Equal Protection rights based on supervisory and policymaker liability.  (EF No. 7, PageID #100–01). Defendants argue that Plaintiff's supervisor liability claims fail because there are insufficient allegations of Supervisor Defendants engaging in "active unconstitutional behavior" or "active participation" in Plaintiff's alleged injuries.  (ECF No. 13, PageID #149–51).  Plaintiff's respond that the First Amended Complaint has sufficient allegations of specific conduct by Supervisor Defendants related to importing, reinforcing, creating, and authorizing the tactics, policies, and customs that were the moving force behind the July 30th incident, as well as a pattern of selective enforcement and failure to investigate or correct deputy conduct afterward.  (ECF No. 17-1, PageID #262–63).  Defendants reply that the First Amended Complaint lacks any allegation that

Supervisor Defendants participated in, were present during, or participated in the prior planning or after investigation of the July 30th situation .  (ECF No. 18, PageID #344–45).

Because there is no vicarious liability under § 1983, and supervisory officials cannot be liable for constitutional violations solely on the basis of *respondeat superior*, "proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)); *see also Johnson v. Ohio Dep't of Corr. Rehabs.*, 2023 U.S. Dist. LEXIS 106917, at *8–9 (S.D. Ohio June 20, 2023) (providing that an individual defendant cannot be held liable in a § 1983 action "absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct").  "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."  *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).  As such, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Id.* (quoting *Hays*, 668 F.2d at 874).  A "mere failure to act will not suffice to establish supervisory liability."  *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).  As for establishing the requisite causal connection, pleading allegations are sufficient "where the supervisor's 'active unconstitutional conduct' 'could be reasonably expected to give rise to just the sort of injuries that occurred.'"  *See Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 244 (6th Cir. 2016)); *Venema v. West*, 133

F.4th 625, 633 (6th Cir. 2025) (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012)).

The Court finds that the First Amended Complaint plausibly alleges that Supervisor Defendants implicitly authorized or knowingly acquiesced in the unconstitutional conduct of their subordinates—the Deputy Defendants.  As discussed above, Plaintiff alleges that Supervisor Defendants participated in a law enforcement exchange trip to Israel where they received specific training on tactics for suppressing and neutralizing protest activity and they then incorporated these suppression tactics into training and policies for the CCS.  (*See* ECF No. 7, PageID #78–80, 82, 90–92, 100–01, ¶¶ 37–45, 54–56, 101–02, 116, 169–77).  Supervisory liability for § 1983 claims may attach when there are sufficient facts to conclude that the defendant "'created a policy or custom under which unconstitutional practices occurred or that he allowed the continuance of such a policy or custom.'"  *Brock v. Wright*, 315 F.3d 158, 165 (2d Cir. 2003) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (alteration adopted).  For such liability to attach, the alleged unconstitutional misconduct must be "*the result* of a policy promulgated by the defendant."  *Id*. at 166 (emphasis in original).

The Court finds that the allegations demonstrate that Supervisor Defendants actively encouraged unconstitutional conduct by CCS deputies and it was reasonably foreseeable that this encouragement and training would give rise to the alleged injuries suffered by Plaintiff during the alleged July 30th assault.  The allegations demonstrate that Supervisor Defendants played an active role in the alleged constitutional misconduct that is sufficient to sustain a § 1983 claim against them based on supervisor liability.  *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow

encouraged or condoned the actions of their inferiors." (citations omitted).  Accordingly, the Court declines to dismiss Plaintiff's claims under Count XI based on insufficient pleaings.

### 2.    Qualified Immunity

Defendants separately argue that Supervisor Defendants are entitled to qualified immunity on Count XI.  (ECF No. 13, PageID #151–52).  Plaintiff responds in opposition.  (ECF No. 17-1, PageID #263–65).  The Court agrees with Defendants.

The doctrine of qualified immunity shields government officials from civil liability in the performance of their duties so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Qualified immunity is not merely a defense to liability; the doctrine provides immunity from suit altogether.  *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019).  This form of immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and protects "all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations omitted).

Courts engage in a two-step inquiry to determine whether a defendant is entitled to qualified immunity.  "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?"  *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir.

2002) (citations omitted). "It is the plaintiffs' burden to show that the defendants are not entitled to qualified immunity." *Hopkins v. Nichols*, 37 F.4th 1110, 1114 (6th Cir. 2022).

At the first step, because the Motion for Judgment does not address whether Plaintiff adequately pled Fourth Amendment excessive force claims and First Amendment violation claims against Deputy Defendants, the Court will assume such claims were adequately pled. As discussed above, the Court finds that supervisor liability attaches. Moving to the second step, Defendants concede that "the right to assemble under the First Amendment, and the right to be free from excessive force and discrimination under the Fourth Amendment are well-established in general terms." (ECF No. 13, PageID #152). They fail to challenge whether the underlying rights that were violated by Deputy Defendants were clearly established. Defendants essentially argue that they are entitled to qualified immunity because Plaintiff has not identified an earlier case in which supervisors, such as a sheriff and his chief deputy, have been held liable for subordinates using excessive force at a demonstration. (*Id.* at PageID #152).

Although the issue has not been addressed by the Sixth Circuit directly, other circuits have held that, in the context of supervisor liability, "the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998). "In other words, for a supervisor to be liable there must be a bifurcated 'clearly established' inquiry -- one branch probing the underlying violation, and the other probing the supervisor's potential liability." *Id.* Plaintiff failed to provide or cite any caselaw showing that supervisors have been held liable for instituting deficient training and customs which subsequently lead to subordinates using excessive force against protestors. Plaintiff cites several

cases demonstrating that free speech rights and the right to be from excessive force are clearly established.  (ECF No. 17-1, PageID #265).  But the cited cases, while establishing those rights at a generalized level, are not particularly similar to the facts presented in this case; and even if they were, they do not address supervisory liability at all.  It was Plaintiff's burden to provide caselaw clearly establishing the unconstitutionality of Supervisor Defendants' conduct.  *See Lucas v. City of Reynoldsburg*, No. 25-3481, 2026 LX 50841, at *12 (6th Cir. Jan. 23, 2026) (citing *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013); *Moore v. Oakland Cnty.*, 126 F.4th 1163, 1167 (6th Cir. 2025)).  Plaintiff failed to do so.  Accordingly, Supervisor Defendants are entitled to qualified immunity and Count XI is **DISMISSED**.

### C.    Count XII against Supervisor Defendants

In Count XII, Plaintiff asserts a claim of reckless hiring, training, supervision, discipline, staffing, and retention against Supervisor Defendants.  (ECF No. 7, PageID #101–02, ¶¶ 178–82).  Under Ohio law, to prevail on a claim for negligent hiring, supervision, training, and retention, a plaintiff must establish:  "1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of that incompetence; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injures."  *Herndon v. Torres*, 249 F. Supp. 3d 878, 887 (N.D. Ohio 2017) (citing *Sygula v. Regency Hosp. of Cleveland E.*, 2016-Ohio-2843, 64 N.E.3d 458, 471 (Ohio Ct. App. 2016)); *see also Est. of Barney v. PNC Bank, Nat. Ass'n,* 714 F.3d 920, 929 (6th Cir. 2013) (citing *Lehrner v. Safeco Ins./ Am. States Ins. Co.*, 171 Ohio App. 3d 570, 2007 Ohio 795, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007)); *Watson v. City of Cleveland*, 202 F. App'x 844, 857 (6th Cir. 2006) (citing *Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App. 3d 30, 2003 Ohio 5394, 798 N.E.2d 1190, 1197 (Ohio Ct. App.

2003)). For Ohio claims of negligent hiring, retention, or supervision, "foreseeability [is] the test of employer liability." *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 745 (N.D. Ohio 2008) (quoting *Dawson v. Airtouch Cellular*, 42 F. Supp. 2d 767, 772 (S.D. Ohio 1999); *Browning v. Ohio State Highway Patrol*, 151 Ohio App. 3d 798, 809–10, 2003 Ohio 1108, 786 N.E.2d 94, 103 (2003)).

> The Ohio Court of Appeals further explained the nature of such claims:
>
> In the context of negligent hiring, supervision, or retention, liability on behalf of the employer results by way of its own negligence in selecting a person to employ or allowing a person to continue to work, where the employer, knows or should have known of the hired individual's violent or dangerous propensities. The focus of these claims is on the employer's knowledge of the hired individual's violent, criminal, or tortious propensities and whether such knowledge would have prevented the employment relationship. At a very minimum, a plaintiff must show that the employer knew or should have known of the hired person's criminal or tortious propensities. The foreseeability of a criminal act depends upon the knowledge of the employer, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are "somewhat overwhelming" that the employer will be liable. "The mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant * * * it is only where the misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed."

*Jackson v. Hogeback*, 2014-Ohio-2578, ¶ 34. (Ohio Ct. App. 2014) (citations omitted)

Defendants argue that Count XII fails because Plaintiff failed to sufficiently plead facts to establish elements 1 (employment relationship), 3 (employer's knowledge), and 5 (proximate causation) because: (i) Supervisor Defendants did not employ the deputy defendants; (ii) there are no allegations that Supervisor Defendants knew any of the Deputy Defendants were incompetent; and (iii) there are no allegations of prior misbehavior by the Deputy Defendants or Supervisor Defendants knowing of such prior misbehavior. (ECF No. 13, PageID #152–53). Addressing the first element, Plaintiff responds that the first amended complaint "alleges an employment relationship between the Deputy Defendants and Defendant Cuyahoga, and that the Policymaker

Defendants exercised supervisory authority over those employees, including authority over hiring, training, discipline, staffing, and retention within the Sheriff's Office.  (ECF No. 17-1, PageID #266).  This argument appears to be an admission that the first amended complaint solely alleges an employment relationship between Deputy Defendants and the County and indicates that the County is the employer of the Deputy Defendants.  This would be fatal to Plaintiff's negligent hiring, supervision, and retention claim because such a claim must be asserted against an employer and Plaintiff is asserting this claim against Supervisor Defendants, not the County.

Plaintiff implicitly argues that Supervisor Defendants are liable simply because they have exercised authority over hiring, training, discipline, etc. over the Deputy Defendants.  At the same time, she cites no authority such a proposition.  The Court further notes that the pleadings themselves are unclear as well.  The beginning of the First Amended Complaint explicitly alleges that the Deputy Defendants, as well as Supervisor Defendants, were all employed by the County. (ECF No. 7, PageID #75–76, ¶¶ 8–14).  Plaintiff later alleges that Supervisor Defendants "employed, asserted agency control over, and/or otherwise directed the Deputy Defendants in their assault of Plaintiff and violations of Plaintiff's constitutional rights."  (*Id.* at PageID #101, ¶ 179). This allegation can be read as Supervisor Defendants using and directing the Deputy Defendants with respect to the alleged assault of Plaintiff, not as being the employer of Deputy Defendants. There are also no factual allegations that Supervisor Defendants specifically hired, trained, or supervised any of the Deputy Defendants;[2] only the conclusory allegations that: "[Supervisor] Defendants failed to exercise due care and acted in a reckless manner in hiring, training,

---

[2] The first amended complaint does not speak to the hiring of any of the Deputy Defendants and specifically states that Supervisor Defendants were the final policymakers for training and supervision policies and priorities in the Cuyahoga Sherriff's Officer—but shaping and making policy decisions about how to train and supervise employees does not mean that Supervisor Defendants themselves directly trained and supervised the Deputy Defendants.  (ECF No. 7, PageID #80–81, ¶¶ 45, 53

supervising, disciplining, staffing, and retaining the Deputy Defendants." (*Id.* ¶ 180).  Conclusory allegations are not entitled to the assumption of truth, nor will they suffice to state a plausible claim for relief."  *Twombly*, 550 U.S. at 555 ("[L]abels, conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  Because the first amended complaint lacks sufficient allegations to establish Supervisor Defendants as employers, Plaintiff's claim fails.

Additionally, the Court finds the pleadings do not sufficiently establish element 3. Defendants argue that there are no allegations that Supervisor Defendants had any knowledge about prior misbehavior by the Deputy Defendants, let alone allegations that the Deputy Defendants had prior incidents of constitutional misconduct.  (ECF No. 13, PageID #153). Plaintiff responds that the first amended complaint "alleges that the [Supervisor] Defendants were on notice of constitutionally offensive conduct and risks in protest contexts and nevertheless failed to take corrective action, training, supervision, or discipline." (ECF No. 17-1, PageID #266 (citing ECF No. 7, PageID #90–91, 100, ¶¶ 104–10, 174)).  First, the allegations cited by Plaintiff are conclusory and are simply a recitation of the elements of the cause of action.  Second, the only allegation asserted against Supervisor Defendants (¶ 174 of the first amended complaint) generally speaks to "deputies under their supervision" but does not identify the Deputy Defendants or any specific instances of prior unconditional conduct by the Deputy Defendants.  The current allegations do not meet the minimum requirements for establishing that Supervisor Defendants knew or should have known of the Deputy Defendants' criminal or tortious propensities or that hiring the Deputy Defendants was unreasonable because misconduct was reasonably foreseeable. *See Jackson*, 2014-Ohio-2578, ¶ 34; *Hout*, 550 F. Supp. 2d at 745.

Because the pleadings fail to sufficiently establish that Supervisor Defendants are employers of the Deputy Defendants or that they had knowledge of the Deputy Defendants' incompetence, Plaintiff's negligent hiring, training, and supervision claim fails.  Accordingly, Count XII is **DISMISSED WITHOUT PREJUDICE**.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion for Judgment is **GRANTED** to the extent that: (i) Plaintiff's claims for *Monell* liability against the County based on the theories of ratification and acquiesce/tolerance are **DISMISSED WITHOUT PREJUDICE**; (ii) Count XI is **DISMISSED** based on qualified immunity; and (iii) Count XII is **DISMISSED WITHOUT PREJUDICE**.  Otherwise, the Motion for Judgment is **DENIED** in all other respects.

**IT IS SO ORDERED.**

Date: July 31, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**